UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| HELEN REGAN, an individual,<br><br>            Plaintiff,<br><br>      v.<br><br>HDR ENGINEERING, INC., a Nebraska Corporation,<br><br>           Defendant. | Case No. 1:17-cv-00342-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Pending before the Court is Defendant's Motion for Partial Summary Judgment. (Dkt. 39.) The motion has been fully briefed and oral argument was held on October 21, 2019. For the reasons that follow, the Court will deny the motion.

## FACTUAL AND PROCEDURAL BACKGROUND

This action is brought by Helen Regan, a former employee of HDR Engineering, Inc. (HDR), under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (FLSA), and Idaho state law. Regan alleges HDR unlawfully refused to pay overtime wages to her and other HDR employees, and wrongfully discharged her from her employment in retaliation for reporting unpaid overtime wages. (Dkt. 9.) HDR's motion for partial summary judgment seeks dismissal of the FLSA retaliatory discharge claim on the grounds that: 1) there is no evidence of a causal link between Regan's complaints regarding overtime pay and the

termination of her employment and 2) Regan's termination was based on a legitimate, non-retaliatory reason. (Dkt. 39.) The relevant facts regarding this dispute are set forth below in the light most favorable to Regan, the non-moving party.

HDR is an engineering firm, incorporated in Nebraska with offices located worldwide, which provides a wide variety of engineering services to its clients in connection with various projects. Regan was employed in the Visualization Department of HDR's Boise, Idaho office from March 23, 2015, until May 4, 2017. (Dkt. 9 at 2.) The visualization department produces three-dimensional renderings of proposed engineering projects as an optional "add on" service that HDR clients may request. Regan alleges that she, and other HDR employees, frequently worked more than 40-hours in a work week, accruing hours of overtime, for which they were not paid.

HDR employees allocate their time spent during a workday to certain classifications of activities or billing codes. Regan's supervisors were Denise Townsend and Matthew Craft. Regan asserts Townsend and Craft pressured her and other employees to bill a specified number of hours for tasks on projects to stay within the project's estimated costs when, in reality, the tasks actually took more time to complete. As a result, Regan alleges, she worked time off the clock for which she was not paid. The complaint identifies particular projects where, Regan alleges, the number of hours allotted for each task was insufficient to complete the work. Regan claims she billed only for the allotted amount of time, even though she worked more hours to complete the tasks. Additionally, Regan alleges HDR employees were required to attend meetings, i.e. brown bags, all-staff meetings, CEO updates, and performance reviews, during work hours which they could

not record or bill and for which they were not paid.

On August 12, 2016, Regan met with HDR's Idaho Vice President, Kate Eldridge, and told Eldridge that Townsend and Craft had been pressuring her to charge less work time than she actually spent on projects. During that meeting, Regan alleges she explained to Eldridge the details of the projects and why she had worked more hours than allotted. On August 15, 2016, Eldridge informed Townsend and Craft of Regan's report of unpaid overtime (the FLSA report).[1]

Regan alleges that, after August 15, 2016, Townsend's and Craft's demeanor towards her changed significantly and she was subjected to unfair, negative treatment from Townsend and Craft in the form of negative attitudes, harassing comments, unfair criticism of Regan's work performance, micro-management of Regan on the job, negative performance reviews, and mandated personal time off (PTO). Examples of the negative treatment alleged in the complaint include: Craft reforecasting projects away from Regan, not assigning Regan as a project lead on any new projects, and assigning Regan to work almost exclusively on projects Craft was managing. Regan alleges Craft directed at least one other team member to not assign work to Regan; directed a junior team member to review Regan's work when Craft was out of the office; and, at the end of each day, Craft would "humiliate" Regan in front of her co-workers by requiring Regan to show Craft what

---

[1] Regan's August 12, 2016 FLSA Report to Eldridge is the primary report or complaint of unpaid overtime referred to by the parties in their briefing and arguments on this motion. The complaint, however, contains allegations of additional instances where Regan complained of or reported being asked to work unpaid overtime. *See e.g.* (Dkt 9 at ¶ 121) ("On or about July 20, 2016, Plaintiff complained to Townsend and Craft she was being asked to work overtime hours without being compensated for working them.").

she had done that day, explain what the next steps were, and give an estimate of time required to complete the task.

Regan also alleges in early 2017, Townsend and Craft increased her planned utilization rate from 70% to 90%, making her the only full time employee to have a utilization rate of 90%. HDR sets utilization goals for each employee annually. "An employee's utilization rate is the percentage of billable hours charged to total hours charged." (Dkt. 9 at ¶ 20.) Regan alleges certain time could be charged towards an employee's utilization rate and other time "counted against" the rate. The utilization rate was a factor in HDR's performance matrix that was used to decide who would be terminated from the work force. Regan alleges Eldridge, Townsend, and Craft intentionally increased her planned utilization rate after she made her report to justify their decision to terminate her employment.

Another example of retaliation alleged in the complaint relates to Regan's application for tuition assistance to attend educational courses at Boise State University's "Games, Interactive Media, and Mobile" (GIMM) Program. Regan was approved for the program subject to certain requirements. The parties dispute, however, certain material facts concerning when the application was approved and when the conditions for approval were imposed, both in relation to when Regan reported the unpaid overtime to Eldridge on August 12, 2016. These disputed facts are material to whether HDR retaliated against Regan, because of her report of unpaid overtime.

On January 31, 2017, Regan met with Zelma Miller, who worked in HDR's human resources department, and reported that Townsend and Craft were retaliating against her

for her overtime complaints, treating her unfairly, impugning her character to her co-workers, and were trying to get rid of her for reporting the unpaid overtime.

On May 4, 2017, Regan was terminated from her employment with HDR. Regan filed the initial complaint in this matter on August 17, 2017. An amended complaint was filed on September 28, 2017, raising three claims: 1) wage and hour violations (unpaid overtime) in violation of the FLSA, 29 U.S.C. § 207; 2) retaliatory discharge in violation of the FLSA, 29 U.S.C. § 215(a)(3); and 3) unpaid wages under Idaho law, Idaho Code § 45-601 *et seq*. (Dkt. 9.) HDR's motion for partial summary judgment seeks dismissal of Count Two, the FLSA retaliation claim. (Dkt. 39.)

## STANDARD OF REVIEW

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the non-moving party, demonstrates "there is no genuine issue of any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. County of Los Angeles*, 477 F.3d 652, 658 (9th Cir. 2007). Evidence includes "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits...." *DeVries v. DeLaval, Inc.*, 2006 WL 1582179, at *5 (D. Idaho June 1, 2006), report and recommendation adopted, 2006 WL 2325176 (D. Idaho Aug. 9, 2006).

The moving party initially bears the burden to show no material fact is in dispute and a favorable judgment is due as a matter of law. *Celotex*, 477 U.S. at 323. If the moving party meets this initial burden, the non-moving party must identify facts showing a genuine issue for trial to defeat the motion for summary judgment. *Cline v. Indus. Maint. Eng'g &*

*Contracting Co.*, 200 F.3d 1223, 1229 (9th Cir. 2000). The Court must grant summary judgment if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## ANALYSIS

### 1.    FLSA Retaliation -- Burden Shifting Framework

Congress enacted the FLSA in 1938 to protect workers from substandard wages. *Barrentine v. Arkansas–Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981). Section 207(a)(1) of the FLSA sets forth the right of employees to receive overtime pay "at a rate not less than one and one-half times the regular rate" for any hours worked in excess of 40 hours in any work week. 29 U.S.C. § 207(a)(1). Under the FLSA, an employer may not "discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee." 29 U.S.C. § 215(a)(3).

The statute "protect[s] persons who report illegal conduct to government agencies or complain about such conduct to their employers, even though they have not yet instituted a formal proceeding." *Perez v. Oak Grove Cinemas, Inc.*, 68 F.Supp.3d 1234, 1247 (D.Or. 2014) (quoting *Leonard v. St. Rose Dominican Hosp.*, 310 F.3d 653, 655 (9th Cir. 2002)). The FLSA is interpreted broadly to "give effect to the statute's remedial purpose." *Id.* "It is designed to encourage employees to report alleged violations of the FLSA's substantive provisions without fear of reprisal." *Id.* (citation omitted); *see also Lambert v. Ackerley*,

180 F.3d 997, 1003-04 (9th Cir. 1999) (FLSA's anti-retaliation provision is intended "to provide an incentive for employees to report wage and hour violations by their employers" and "to ensure that employees are not compelled to risk their jobs in order to assert their wage and hour rights under the Act.").

When evaluating a retaliation claim in the summary judgment context, the plaintiff bears the initial burden to establish a prima facie case of FLSA retaliation by showing: 1) plaintiff engaged in activity protected by the FLSA; 2) defendant took an adverse employment action; and 3) there was a causal link between the protected activity and the adverse action. *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1064–65 (9th Cir. 2002) (setting forth elements of a retaliation claim under Title VII); *Stewart v. Masters Builders Ass'n of King and Snohomish Ctys.*, 736 F.Supp.2d 1291, 1295 (W.D. Wash. 2010).

"At summary judgment, the degree of proof necessary to establish a prima facie case is 'minimal and does not even need to rise to the level of a preponderance of the evidence.'" *Dominguez-Curry v. Nev. Transp. Dept.*, 424 F.3d 1027, 1037 (9th Cir. 2005) (quoting *Lyons v. England*, 307 F.3d 1092, 1112 (9th Cir. 2002) (quoting *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994))). Once a plaintiff succeeds in presenting a prima facie case, the burden of production, but not persuasion, then shifts to the defendant to articulate a "legitimate, nondiscriminatory reason" for its employment decision. *Noyes v. Kelly Servs.*, 488 F.3d 1163, 1168 (9th Cir. 2007). "Should the defendant carry its burden, the burden then shifts back to the plaintiff to raise a triable issue of fact that the defendant's proffered reason was a pretext for unlawful discrimination." *Id.*

The ultimate burden of persuasion remains at all times with plaintiff to show the defendant's action was the product of an unlawful retaliatory motive. *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 514-15 (1993); *Villiarimo*, 281 F.3d at 1063 ("[C]ourts only require that an employer honestly believe its reason for its actions, even if its reason is foolish or trivial or even baseless.").

## 2.     Prima Facie Case

Here, for purposes of its motion for summary judgment only, HDR assumes the first two elements are met: Regan's August 12, 2016 report of unpaid overtime hours was a protected activity under the FLSA and Regan's termination of employment constituted an adverse employment action. (Dkt. 39 at 7.) HDR argues, however, that Regan cannot, as a matter of law, establish the third element requiring a showing that the protected activity was a but-for cause of her termination, because Regan's termination was too far removed from her report, being separated by nine months, and because HDR would have laid Regan off regardless of her reporting the unpaid overtime.

In response, Regan argues the adverse employment actions alleged in this case are not limited to the termination of her employment and that causation is established by the series of retaliatory adverse employment actions -- events, comments, and negative treatment -- that immediately followed her report of unpaid overtime, which all lead up to her termination of employment nine months later. (Dkt. 40 at 7-9.) The Court agrees with Regan that adverse actions are not limited to termination and finds that Regan has established her prima facie case.

### A.     Adverse Employment Actions

An employment action is adverse if it would dissuade a reasonable worker from engaging in FLSA-protected activity. *Ray v. Henderson*, 217 F.3d 1234, 1245 (9th Cir. 2000); *see also Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (Under Title VII, "an action is cognizable as an adverse employment action if it is reasonably likely to deter employees from engaging in protected activity."); *McBurnie v. City of Prescott*, 511 Fed.Appx. 624, 625 (9th Cir. 2013) (applying the *Burlington* standard to an FLSA retaliation claim). This is an objective standard. *Burlington*, 548 U.S. at 68. But, "[c]ontext matters. The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships...." *Id.* at 69 (internal quotations marks and citation omitted). "[A]n 'act that would be immaterial in some situations is material in others.'" *Id.*

Adverse employment actions are broadly defined by the Ninth Circuit and are not limited to actions such discharges, transfers, or demotions. *See Lyons*, 307 F.3d at 1118. Instead, adverse employment actions may include lateral transfers, unfavorable job references, and changes in work schedules. It may also include omissions, such as the denial of a promotion, if the employee can demonstrate adequate qualifications. *See Chuang v. Univ. of Cal. Davis, Bd. of Trustees*, 225 F.3d 1115 (9th Cir. 2000) (holding denial of full time tenured teaching position constitutes adverse employment action). Adverse actions do not, however, include "trivial harms" or "every offensive utterance by co-workers, because offensive statements by co-workers do not reasonably deter employees from engaging in protected activity." *Burlington*, 548 U.S. at 68; *see also Ray*, 217 F.3d at 1242-43; *Brooks v. City of San Mateo*, 229 F.3d 917, 929 (9th Cir. 2000)

("[O]stracism suffered at the hands of coworkers cannot constitute an adverse employment action."); *Nunez v. City of Los Angeles*, 147 F.3d 867, 875 (9th Cir. 1998) (being scolded and/or bad-mouthed by others in workplace does not constitute adverse action). An adverse employment action is one that affects the actual terms and conditions of employment. *Hardage v. CBS Broadcasting, Inc.*, 427 F.3d 1177, 1188–89 (9th Cir. 2005).

The Court finds, for purposes of this motion, that in addition to the termination, which is clearly an adverse action, Regan has pointed to evidence of conduct by her supervisors occurring immediately after her FLSA report which could be found to constitute adverse employment actions, including: reassigning work away from Regan; no longer assigning Regan as a project lead on new projects; assigning Regan fewer billable projects and tasks that counted towards her utilization rate; and increasing Regan's utilization rate to a level higher than any other full-time employee; and requiring Regan to take mandatory PTO. When viewed in the light most favorable to Regan, a reasonable jury could find these alleged actions were adverse employment actions. Increasing an employee's work standards while, at the same time, taking work away from that employee making it difficult to meet the heightened employment standards - i.e. utilization rate - could dissuade a reasonable worker from engaging in FLSA-protected activity.

Regan argues the additional conditions placed on her acceptance into the tuition assistance program are further evidence of adverse actions. There are, however, genuine issues of material facts in dispute concerning the tuition assistance program. Specifically, the timing of when Regan's tuition assistance application was approved and when the conditions for that approval were put in place, in relation to when Regan reported the

unpaid overtime to Eldridge, cannot be resolved based on the record before the Court. (Dkt. 9, Amended Complaint at ¶ 79) (Dkt. 39-3, Dec. Craft at ¶¶ 17-19.) If the application was approved, with the conditions, before Regan reported her overtime concern, that weighs against finding the actions relating to the tuition assistance program were adverse. If, however, the conditions were imposed after Regan reported the unpaid overtime, the additional conditions could be determined to be adverse actions. The alleged actions of Townsend and Craft relating to the tuition assistance program could be, depending on how the disputed facts are resolved, determined to be adverse employment actions.

There are also factual disputes concerning the allegations of negative comments and treatment toward Regan by Townsend and Craft which, Regan argues, were adverse actions. During the hearing on the motion, counsel for HDR represented Townsend denied making the negative comments alleged by Regan. Stray comments and negative treatment by a supervisor do not necessarily constitute adverse employment actions. *See Burlington*, 548 U.S. at 68-69 (finding "trivial harms" and "snubbing by supervisors" do not constitute adverse employment actions); *Hardage*, 427 F.3d at 1189 (supervisor's snide remarks and threats against the plaintiff's job such as "your number's up" were insufficiently severe to support a Title VII retaliation claim); *Kortan v. California Youth Authority*, 217 F.3d 1104, 1112 (9th Cir. 2000) (holding a supervisor's laughing, hostile stares, and increased criticism were insufficient to preclude summary judgment dismissing the plaintiff's retaliation claim); *Brooks*, 229 F.3d at 929 (stating that badmouthing an employee outside the job reference context does not constitute adverse employment action); *Ray*, 217 F.3d at 1243 (definition of "adverse employment action" "does not cover every offensive

utterance by co-workers, because offensive statements by co-workers do not reasonably deter employees from engaging in protected activity"). Whether these allegations give rise to adverse actions will depend on how the disputed facts are resolved and the context in which the alleged verbal abuse and cursory demeanor occurred. The Court cannot resolve the issue at this stage of the proceedings.

## B. Causation

To show causation, a plaintiff must "establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." *University of Texas Southwestern Medical Ctr. v. Nassar*, 570 U.S. 338, 362 (2013); *see also Sorenson v. City of Caldwell*, 692 Fed. Appx. 832 (9th Cir. 2017) (recognizing the third element of the prima facie case for a Title VII retaliation claim requires a plaintiff to show that the protected activity was a but-for cause of the alleged adverse action); *Villiarimo*, 281 F.3 at 1064–65. Under this heightened standard, the plaintiff must prove that "the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Nassar*, 570 U.S. at 360. This burden on the plaintiff to "establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer" is "more demanding than the motivating-factor standard." *See Stilwell v. City of Williams*, 831 F.3d 1234, 1246 (9th Cir. 2016) (quoting *Nassar*, 570 U.S. at 362).

"The causal link can be inferred from circumstantial evidence such as the employer's knowledge of the protected activities and the proximity in time between the protected activity and the adverse action." *Dawson v. Entek Intern.*, 630 F.3d 928, 936 (9th Cir. 2011) (Title VII). "[P]roximity in time between the protected action and the allegedly

retaliatory employment decision [i]s one [way] a jury logically could infer [that the plaintiff] was terminated in retaliation." *Id.* (citing *Keyser v. Sacramento City Unified Sch. Dist.*, 265 F.3d 741, 751–52 (9th Cir. 2001) (internal quotation marks omitted)). "In some cases, temporal proximity can by itself constitute sufficient circumstantial evidence of retaliation for purposes of both the prima facie case and the showing of pretext." *Id.* (citing *Bell v. Clackamas County*, 341 F.3d 858, 865–66 (9th Cir. 2003); *Miller v. Fairchild Indus., Inc.*, 797 F.2d 727, 731–32 (9th Cir. 1986)).

The Court finds Regan has pointed to evidence of actions by her supervisors immediately following her report of unpaid overtime which, if found to be true, a reasonable jury could conclude were adverse actions taken in retaliation for the protected activity and that, but for Regan's report, HDR would not have taken the adverse actions. Namely, immediately after she made her FLSA report, Townsend started making negative comments towards Regan, Craft reassigned/funneled work away from her, Regan was no longer assigned work that counted towards her utilization rate, and Regan's utilization rate was increased -- all of which resulted in Regan's low score on the job performance matrix and ultimately her termination from employment.

The Court makes no determination at this time whether any of the actions of Townsend and Craft alleged by Regan were "adverse actions" or whether the causation element has been proven. Those questions involve resolution of factual disputes to be made by the fact finder at a later time. For purposes of this motion, the Court finds only that Regan has pointed to evidence in the record establishing genuine issues of material fact exist sufficient to overcome summary judgment on these elements of her prima facie case.

## C. Conclusion

Viewing the facts in the light most favorable to Regan, the Court finds, for purposes of summary judgment, Regan has met her burden of establishing a prima facie case of FLSA retaliation. Specifically, Regan has pointed to evidence upon which a reasonable trier of fact could find a causal link existed between the protected activity and the alleged adverse employment actions; i.e., that "but-for" her FLSA report, HDR would not have taken adverse actions against her. *See Nassar*, 570 U.S. at 362; *Sorenson*, 692 Fed. Appx. 832. Namely, the actions and conduct of Townsend and Craft towards Regan which began immediately after her August 12, 2016 report of unpaid overtime to Eldridge and continuing through the termination of her employment.

## 3. Legitimate and Non-discriminatory Reason

The burden now shifts to HDR to articulate a legitimate, non-discriminatory reason for the adverse employment actions. HDR argues it is undisputed that Regan was terminated from her employment due to lack of work, which was a legitimate and non-discriminatory reason for the discharge. The decision to lay off Regan, HDR contends, was based on a performance matrix that used a combination of factors, including performance and technical qualifications, to determine which employee would be terminated due to lack of work. (Dkt. 39 at 9) (Dkt. 39-3, Dec. Craft at ¶¶ 25, 26) (Between February and April, 2017, Townsend and Craft concluded the visualization team was overstaffed and decided to reduce the visualization team size using a performance matrix to evaluate the performance of each of the six employees on the visualization team.).

The Court finds HDR has pointed to evidence showing the decision to terminate Regan was based on a legitimate and non-discriminatory reason. The burden now shifts back to Regan to demonstrate that HDR's proffered reason for the termination of her employment was pretextual.

**4.    Pretext**

Plaintiff can prove pretext in two ways: (1) "indirectly by showing that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable," or (2) directly, "by persuading the court that a discriminatory reason more likely motivated the employer." *Bowen v. M. Caratan, Inc.*, 142 F.Supp.3d 1007, 1025 (E.D. Cal. 2015) (quoting *Villiarimo*, 281 F.3d at 1062); *Burdine*, 450 U.S. at 256 (Plaintiff must show the defendant's "proffered reason was not the true reason for the employment decision.... [Plaintiff] may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence."). The plaintiff must show the employer's justification is more than just false, "courts only require that an employer honestly believed its reason for action, even if its reason is foolish or trivial or even baseless." *Id.* Plaintiff has the ultimate burden of persuasion to show the defendant's action was the product of an unlawful retaliatory motive. *See St. Mary's Honor*, 509 U.S. at 514-15; *Villiarimo*, 281 F.3d at 1063.

"'Direct evidence is evidence, which if believed, proves the fact of [discriminatory animus] without inference or presumption.'" *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir. 1998) ((quoting *Davis v. Chevron, U.S.A., Inc.*, 14 F.3d 1082, 1085 (5th

Cir.1994)). On the other hand, "circumstantial evidence...tends to show that the employer's proffered motives were not the actual motives because they are inconsistent or otherwise not believable." *Id.* at 1222. "Where the evidence of pretext is circumstantial, rather than direct, the plaintiff must present 'specific' and 'substantial' facts showing that there is a genuine issue for trial." *Noyes*, 488 F.3d at 1170 (quoting *Godwin*, 150 F.3d at 1222). Evidence of pretext, whether direct or indirect, must be considered cumulatively. *Chuang*, 225 F.3d at 1129.

In mixed-motive cases, an employer can avoid liability by showing it would have taken the same action against an employee regardless of the employee's protected activity. *Knickerbocker v. City of Stockton*, 81 F.3d 907, 911 (9th Cir. 1996) ("It is the defendant's affirmative burden to prove that it would have taken the adverse action if the proper reason alone had existed."). In other words, that an employee's protected activity was not a but-for cause of the adverse employment action. *Eng v. Cooley*, 552 F.3d 1062, 1072 (9th Cir. 2009) (citing *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). This question relates to, but is distinct from, the plaintiff's burden to show the protected conduct was a motivating factor in the employer's decision to engage in the adverse action. This inquiry instead asks whether the adverse employment action was based on protected and unprotected activities and, if so, whether the employer would have taken the adverse action if the proper reason alone had existed. *Eng*, 552 F.3d at 1072 (quoting *Knickerbocker*, 81 F.3d at 911). This is a purely factual inquiry. *Id.*

HDR maintains it would have laid Regan off regardless of her report of unpaid overtime, because there was a lack of work and because Regan scored the lowest on the

performance matrix HDR used to determine who would be laid off. Regan argues HDR's reason for terminating her employment - lack of work - is pretext and that the true reason was retaliation for her complaints of unpaid overtime as evidenced by the alleged negative conduct by her supervisors and adverse actions occurring immediately following her reports of unpaid overtime.

HDR asserts Regan cannot establish the reason for her discharge was false or that the true reason for her termination was retaliation, because Regan has agreed that her discharge was for lack of work as evidenced by Regan's own communications with others made immediately following her termination and by her deposition testimony. (Dkt. 39.) Regan disagrees, maintaining she has not admitted or conceded that her termination was due to lack of work. Regan disputes HDR's assessment of the record, arguing, that when read in their entire context and in the light most favorable to her as the non-moving, neither her deposition testimony nor her communications with others establish that she admitted she was terminated because of lack of work. (Dkt. 40.) Instead, Regan asserts, her deposition testimony and the contemporaneous communications simply reflect that she was "parroting" to others what HDR had told her the reason was for her termination, not that Regan agreed HDR's reason was legitimate or that it was the true reason for her discharge. (Dkt. 40.)

The Court finds genuine issues of material fact exist as to whether Regan's termination was for lack of work or in retaliation for the report of unpaid overtime. Viewing the evidence in the light most favorable to Regan, a triable issue exists as to whether HDR's legitimate nondiscriminatory reason for its employment decision was pretext for

retaliation. *See, e.g., Reynaga v. Rosenburg Forest Prods.*, 847 F.3d 678, 691 (9th Cir. 2017) ("[W]e require very little evidence to survive summary judgment in a discrimination case, because the ultimate question is one that can only be resolved through a searching inquiry – one that is most appropriately conducted by the fact finder, upon a full record.") (internal quotation marks omitted); *Noyes*, 488 F.3d at 1170 ("[T]he burden on plaintiffs to raise a triable issue of fact as to pretext is hardly an onerous one."); *Reece v. Pocatello/Chubbuck Sch. Dist. No. 25*, 713 F. Supp. 2d 1222, 1231 (D. Idaho 2010) ("Because motivations are often difficult to ascertain, 'such an inquiry should be left to the trier of fact' since impermissible motives are often easily masked 'behind a complex web of post hoc rationalizations.'") (quoting *Stegall v. Citadel Broad. Co.*, 350 F.3d 1061, 1072 (9th Cir. 2003)).

Regan alleges Townsend made negative comments to her shortly after the unpaid overtime report which are direct evidence of retaliation and pretext. Again, however, the facts related to those alleged negative comments are in dispute.[2] How those factual disputes are resolved will determine whether Townsend's comments are direct evidence of pretext. Snide or stray comments by a supervisor are not necessarily direct evidence of an adverse action. *See e.g. Hardage*, 427 F.3d at 1189 (Supervisor's snide remarks and threats against plaintiff's job were insufficiently severe to support a retaliation claim.).

---

[2] During the hearing on this motion, counsel for HDR stated Townsend has denied making the alleged comments but acknowledged those denials are not part of the record for purposes of the motion for partial summary judgment.

Regardless, the more compelling evidence for purposes of resolving this motion is the "specific" and "substantial" circumstantial evidence Regan has pointed to in the record upon which a reasonable trier of fact could find pretext. *Godwin*, 150 F.3d at 1222. Namely, the alleged adverse actions and negative conduct by her supervisors, the funneling of work away from Regan, unfair negative performance reviews, and increasing Regan's utilization rate all began immediately after Regan reported the unpaid overtime. (Dkt. 40.) As a result, Regan argues, she did not have enough work and was forced to take time off, was unable to bill hours towards her utilization rate, was unable to meet her increased utilization rate, and eventually resulted in her low rating on the performance matrix and the termination of her employment. The Court finds Regan has pointed to specific and substantial evidence of pretext sufficient to withstand summary judgment.

The messages between Regan and others made contemporaneously to her termination in May of 2017 do not, indisputably or as a matter of law, establish that Regan agreed or admitted that her termination was due to lack of work. In fact, when read in their entire context and in the light most favorable to Regan, the exchanges can be reasonably interpreted to support Regan's argument that HDR had been trying to get rid of her ever since she reported unpaid overtime. (Dkt. 39-4, Ex. C at p. 27-28) ("I got laid off last week. But I was expecting it…"Lay off due to lack of work, which is true…there was a lack of work (because they are way over-priced) BUT they have been wanting to get rid of me ever since I reported them to the office manager.") The same is true of Regan's deposition testimony. The Court finds a genuine issue of material fact exists on the question of whether

HDR terminated Regan for lack of work or whether HDR's reason was pretext for retaliation.

At trial, HDR may prevail on its argument by proving to the jury that it would have taken the same action absent Regan's report; i.e., that it would have terminated Regan's employment anyway because of the lack of work. At this stage, however, all factual inferences are made in favor of the non-moving party and Regan needs only to show a genuine issue of material fact to survive the motion and place the ultimate question before the finder of fact at trial. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 146 (2000) ("a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.").

Regan has done so here by pointing to specific and substantial evidence plausibly showing HDR's proffered reason for its allegedly retaliatory actions is unworthy of credence. *See Nicholson v. Hyannis Air Serv., Inc.*, 580 F.3d 1116, 1127 (9th Cir. 2009) ("[V]ery little evidence is necessary to raise a genuine issue of fact regarding an employer's motive" at the summary judgment stage.) (quoting *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1124 (9th Cir. 2004)). Namely, the actions of Townsend and Craft immediately following her FLSA report – reassigning work away from Regan and increasing Regan's utilization rate – which resulted in Regan scoring low on the performance matrix used to determine who would be discharged from the visualization department. There is sufficient evidence in the record upon which a jury could find that HDR's proffered reason for Regan's termination – lack of work – is not credible.

**ORDER**

NOW THEREFORE IT IS HEREBY ORDERED that Defendant's Motion for Partial Summary Judgment (Dkt. 39) is **DENIED**.

The pretrial conference in this matter is set for **January 27, 2020 at 1:30 p.m.** (MT) in Boise, Idaho and the jury trial is set for **March 2, 2020**.

DATED: November 12, 2019

Honorable Candy W. Dale
United States Magistrate Judge